UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARLOS ROMAN, individually and and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRITON LOGISTICS, INC. and ANDREW VOVERIS, individually, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

## CLASS ACTION COMPLAINT AND JURY DEMAND

1. Defendant Triton Logistics, Inc. ("Triton Logistics") is a motor carrier located in Romeoville, Illinois, which transports general freight for its customers.

2. Defendant Andrew Voveris is the President and Founder of Triton Logistics (collectively referred to herein as "Defendants").

3. Plaintiff Carlos Roman is a former driver for Triton Logistics, who brings this action both individually and on behalf of all others similarly situated in order to challenge the following unlawful practices of Defendants: misclassifying drivers as independent contractors when they are, in fact, employees; failing to pay all wages owed to drivers; taking unlawful and excessive deductions from drivers' wages; and failing to reimburse drivers for expenses.

4.     Defendants' unlawful practices described in this complaint deprived Plaintiff Roman and the putative class of similarly situated drivers of wages owed to them in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/9.

## PARTIES

5.     Plaintiff Carlos Roman is an adult resident of Duval County in Florida. He was employed by Defendants as a driver from approximately May 2023 until the end of September 2023.

6.     Plaintiff Roman brings this action on behalf of a putative class of similarly situated individuals, namely: "all persons who have driven as independent contractors for Defendants and have performed work in the State of Illinois for Defendants during the relevant statutory period."

7.     Plaintiff and the members of the putative class are "employees" of Defendants within the meaning of the IWPCA.

8.     Defendant Triton Logistics, Inc. ("Triton Logistics") is an Illinois corporation headquartered in Romeoville, Will County, Illinois. Triton Logistics does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

9.     Defendant Andrew Voveris is an Illinois resident and is the President, Secretary, Officer, and Founder of Triton Logistics. Voveris possesses and exercises the authority to: make or participate in decisions concerning drivers' compensation;

implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

10. Defendants jointly and severally are subject to the provisions of the IWPCA and are "employers" within the meaning of the IWPCA.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

12. The Court has personal jurisdiction over Defendants because Defendant Voveris resides in Illinois; Defendant Triton Logistics resides in Illinois and is registered with the Illinois Secretary of State; Defendant Voveris is named as President and Secretary of Triton Logistics in its filings with the Illinois Secretary of State; and Defendants do business in the State of Illinois.

13. The Court has personal jurisdiction over Plaintiff Roman and the putative class because they have performed worked in Illinois for an Illinois employer.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTUAL BACKGROUND

15. Defendant Triton Logistics is a trucking company with authority granted by the U.S. Department of Transportation ("USDOT") to transport freight. It employs drivers to transport its customers' freight in interstate commerce.

16. Defendant Triton Logistics operates out of its headquarters, located at 525 Anderson Drive in Romeoville, Illinois.

17. Defendant Triton Logistics maintains its fleet in-house, including at its 8-bay truck maintenance facility at the 525 Anderson Drive address.

18. Defendant Triton Logistics also operates a large warehouse with 17 trailer docks at this location.

19. Defendant Triton Logistics also maintains a fleet of "brand new 53-foot dry van trailers" at its yard in Romeoville, Illinois location.

20. Defendants recruited and hired Plaintiff Carlos Roman as a "company driver" to provide transportation services to Defendants' freight customers in approximately May 2023.

21. Although Plaintiff Roman understood that he was being hired as a "company driver," i.e., as an employee, Defendants classified him as an independent contractor and paid him as a 1099 contractor instead of as W-2 employee.

22. During his time working for Defendants as a "company driver," Plaintiff Roman received weekly pay stubs from Defendant Triton Logistics.

23. These pay stubs identify the city and state of the shipper and the receiver for each load that Plaintiff Roman hauled for Defendants.

24. Plaintiff Roman's paystubs demonstrate that during his first seven weeks of work for Defendants, he hauled five loads that either originated in Illinois or were delivered to Illinois.

25. Plaintiff Roman's paystubs indicate that Defendants paid him as a "company driver" a mileage rate of sixty cents per mile, with numerous unlawful deductions from Plaintiff Roman's pay.

26. For example, Defendants deducted $200 from Plaintiff Roman's pay each week toward a "Driver's Escrow" account, over which Defendants retained exclusive control.

27. Defendants' policy documents state that if a driver is terminated or resigns after an at-fault accident, $500 of a $1,000 deductible will be deducted from the driver's current week and final week's paychecks, with the remainder of the deductible to be taken by Defendants from the escrow account.

28. Defendants also deducted $40 per week from Plaintiff's pay for occupational accident insurance.

29. Months after he was hired, Defendants required drivers, including Plaintiff Roman, to begin paying $35 per week to Defendants through payroll deductions to use the Electronic Logging Device ("ELD") that Defendants required all drivers to use.

30. On information and belief, Defendants made similar deductions from the pay of other drivers characterized by Defendants as "company drivers"; for example, Defendants' "Table Policy" now states that the "ELD charge is $35.00 per week."

31. These deductions are not required by law.

32. These deductions are not to the benefit of drivers.

33. Drivers do not freely give express written consent at the time these deductions are made.

34. Defendants do not receive proper authorization from drivers for these deductions.

35. By taking these deductions from Plaintiff Roman's pay, Defendants required Plaintiff Roman to pay for necessary expenditures and losses incurred within the scope of his employment and directly related to services he performed for Defendants, which inured to the primary benefit of Defendants.

36. Defendants failed to reimburse Plaintiff Roman and other drivers for these necessary expenditures and losses incurred within the scope of their employment and directly related to services they performed for Defendants, which inured to the primary benefit of Defendants.

37. Although Plaintiff Roman was paid by Defendants as an allegedly "independent" contractor, Defendants retained total control over Plaintiff's work, making him economically dependent on Defendants.

38. Triton establishes its right to control and direct the terms and details of the work performed by its drivers by, *inter alia*:

    a. directly employing dispatchers and managers who are responsible for directing, supervising, and disciplining its drivers;

    b. requiring new drivers to participate in an orientation before allowing them to work;

    c. setting the drivers' rate and manner of compensation, which are not subject to negotiation;

    d. prohibiting drivers from using their "company vehicle and equipment for any private or non-company purposes" without "specific authorization from your supervisor";

    e. prohibiting drivers from "departing from assigned routes to attend to personal matters";

    f. requiring drivers to limit their home time to no more than three days every two weeks, unless the driver has "accumulate[d] the home time by receiving one additional day off for every additional week drivers stays out on the road";

    g. threatening to impose monetary penalties on drivers for alleged policy infractions;

    h. threatening drivers with termination if they fail to adhere to Triton Logistics' instructions and policies, which include "[e]xcessive absence, unexcused absence, or job abandonment" and "excessive tardiness."

39. Many of these requirements are contained in a series of policy documents provided by Triton Logistics to its drivers. (*See* Policy Documents, attached as **Exhibit 1**).

40. Defendants also controlled and directed the performance of Plaintiff Roman's work in fact. For example:

    a. Defendants controlled Plaintiff Roman's schedule through load assignments;

    b. Defendants assigned specific routes to Plaintiff Roman, prohibited him from deviating from that route, and required him to only fuel at particular fuel locations;

    c. Defendants' dispatchers closely monitored Plaintiff Roman's on-time status;

    d. Defendants' dispatchers closely monitored Plaintiff Roman's hours-of-service logging for DOT; and

    e. Defendants required Plaintiff Roman to submit his trip paperwork, including his bills of lading, to his dispatcher.

41. Triton Logistics' drivers perform work within Triton Logistics' usual course of business, that is, they provide over-the-road commercial trucking services for a motor carrier in the business of providing over-the-road commercial trucking services.

42. Triton Logistics' drivers are an integral part of King Logistics' business because without drivers, Triton Logistics would be unable to provide commercial trucking services to customers.

43. Triton Logistics' drivers perform work within Defendants' usual places of business, namely, the commercial motor vehicles that Triton Logistics own, and which Defendants keep on their facility in Romeoville, Illinois.

44. Triton Logistics' drivers do not work in a genuinely independent trade, occupation, profession, or business as commercial truck drivers because, *inter alia*, Triton Logistics:

   a. represents to its customers that its drivers are Triton Logistics drivers;

   b. brands the trailers transported by the drivers with Triton Logistics' name and logo;

   c. maintains exclusive access to the customers and clients, the revenue from whom Triton Logistics uses to pay the drivers.

45. Plaintiff Roman and all members of the putative class are paid through settlement statements issued by Defendants.

## CLASS ALLEGATIONS

46. Plaintiff Roman brings this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 class action for and on behalf of the following classes, for which Plaintiff seeks certification:

   All persons who performed work in the State of Illinois for Defendants as company drivers while classified as "independent contractors" during the relevant statutory period.

47. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

48. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, Defendants have employed more than 100 drivers per year since 2017 and since 2020 have employed more than 200 drivers per

9

year. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

49. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; and whether Defendants have taken unlawful deductions from drivers' wages.

50. The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers. Plaintiff Roman's and all class members' claims for unpaid wages and unlawful deductions should be readily calculable from Defendants' business records.

51. Plaintiff Roman will fairly and adequately protect and represent the interests of the class. His interest in challenging the unlawful practices of Defendants motivates him to bring this case as a class action. Plaintiff Roman specifically sought out the undersigned counsel, who are experienced in wage and hour litigation and class actions generally as well as in the trucking industry.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class

members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Defendants.

53. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA to drivers, whose individual claims may be too small to warrant the expense of litigation.

54. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

55. The contours of the class will be easily defined by reference to business records kept by Defendants.

## CLAIMS FOR RELIEF

### COUNT I:
### ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Class Claims)

56. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

57. Plaintiff asserts this claim on behalf of himself and the Rule 23 class.

58. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/1 by failing to pay Plaintiff and the Rule 23 class all wages earned.

11

59. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/9 by taking unlawful deductions from the wages earned by Plaintiff and the Rule 23 class.

60. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiff and the Rule 23 class for necessary expenditures and losses required of drivers in the discharge of their employment duties, which inured to the primary benefit of Defendants.

61. Plaintiff and the Rule 23 class seek recovery of their unpaid wages, reimbursement for unlawful deductions, reimbursement for out-of-pocket expenses, liquidated damages, and attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

a. Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

b. Appointing Plaintiff Carlos Roman as class representatives and his counsel as class counsel;

c. An order enjoining Defendants from violating the IWPCA;

d. All unpaid wages;

e. Restitution for all deductions taken from class members' wages;

f. Restitution for all Defendants' operating expenses that class members were forced to bear;

g. An award to Plaintiffs and the Rule 23 class of damages, liquidated damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

h. Attorneys' fees and costs, pursuant to 820 Ill. Comp. Stat. 115/14(a);

i. Pre- and post-judgment interest;

j. Any other relief as this Court deems just and proper.

Date: October 19, 2023

Respectfully submitted,

*/s/ James B. Zouras*
James B. Zouras
STEPHAN ZOURAS, LLP
222 W. Adams St, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
jzouras@stephanzouras.com

Hillary Schwab*
Rachel Smit*
Brant Casavant*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
hillary@fairworklaw.com
rachel@fairworklaw.com
brant@fairworklaw.com

*Pro hac vice application forthcoming*

*Attorneys For Plaintiff And The Proposed Class*

13

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on October 19, 2023, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ James B. Zouras*